```
            IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |  |
|---|---|---|
| BALTIMORE LASER SOLUTIONS, INC., | * | |
| Plaintiff, | * | |
| | * | CIVIL NO.: WDQ-06-1390 |
| v. | * | |
| SONA INTERNATIONAL CORP. ET AL., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Baltimore Laser Solutions, Inc. ("BLS"), a franchisee, sued Sona Laser Centers, Inc. ("SLC"), the franchisor; Sona International Corporation ("SIC" and, together with SLC, "Sona"), SLC's parent company; Thomas R. Noon, an officer of SLC; Dennis R. Jones, founder and president of SLC; Patricia Jones, a former officer of SLC; James H. Amos, Jr., the chairman and chief executive officer of SLC; Heather Rose, the chief operating officer of SLC; Carousel Capital, Inc., an investment banking firm; Cynosure, Inc., a developer and marketer of hair removal systems; and Horace W. Furumoto, an officer of Cynosure. BLS seeks damages incurred as a result of the Defendants': (1) violations of Maryland's Franchise Law;[1] (2) common law fraud;

---

[1] Md. Code Ann., Bus. Reg. § 14-201 *et seq*.

1

(3) negligent misrepresentation; and (4) civil conspiracy, arising out of the franchise relationship between BLS and the Defendants.

Pending is the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), and 12(b)(6) (failure to state a claim).  For the reasons discussed below the motion to dismiss will be granted.

I.  Background

Sona franchises Sona Laser Centers and Sona Med Spas-- companies that offer, *inter alia*, laser hair removal services. On June 2, 2003, Sona and BLS entered into two agreements related to the sale of a franchise to BLS: (1) a franchise agreement ("FA I"); and (2) an area development agreement ("ADA I").  In FA I, Sona granted BLS a franchise to operate a Sona laser hair removal center.  In ADA I, Sona granted BLS a geographic area in Baltimore, Maryland in which it could operate its franchised laser hair removal centers.  That same day, Sona provided BLS with a Uniform Franchise Offering Circular ("UFOC").  Compl. ¶ 19.  At that time, Sona was not registered to offer or sell franchises under the Maryland Franchise Law.  *Id*.  On June 26, 2003, Sona allegedly registered to sell franchises.

On September 17, 2003, Sona and BLS entered into another

2

area development agreement ("ADA II") and another franchise agreement ("FA II"). On March 7, 2005, the parties entered into a third franchise agreement ("FA III").

Each of the agreements contains a forum selection clause. ADA I ¶ 21.6; FA I ¶ 32.6; ADA II ¶ 21.6; FA II ¶ 32.6; FA III ¶ 31.2. ADA I and II each state:

> [BLS] and Sona each also agrees that any action brought by either of them relating to this Agreement or any related agreement, the Area Grant or the Franchised Businesses will be brought in a state or federal court of general jurisdiction in the county or city in which the home office of Sona is located at the time.

ADA I ¶ 21.6; ADA II ¶ 21.6. FA I and II each state:

> You and we each also agree that any action brought by either party relating to this Agreement, any related agreement, the Franchise or the Franchised Business will be brought in a state or federal court of general jurisdiction in the county or city in which our home office is located at the time.

FA I ¶ 32.6; FA II ¶ 32.6. The evidence indicates that the home office is located in Virginia or Tennessee, not Maryland. *See* Compl. ¶¶ 2,3 (stating that SIC and SLC are Virginia Corporations with principal places of business in Franklin, TN and Chesapeake, VA respectively); Mem. Supp. Mot. Ex. 4 ¶ 1 (Affidavit of Heather Rose) (asserting that both SIC and SLC are Virginia Corporations each of which has its principal place of business in Franklin, TN). Additionally, FA III states:

> You and your owners agree that all actions arising under this agreement or otherwise as a result of the relationship between you and us must be commenced in the state or federal court of general jurisdiction in Franklin, Tennessee, and you (and each of your owners) irrevocably submit to the

>     jurisdiction of those courts and waive any objection you (or
>     the owner) might have to either the jurisdiction of or venue
>     in those courts.

FA III ¶ 31.2.

II.  Analysis

Although the Defendants move for dismissal on a variety of grounds, the Court focuses on venue as it is dispositive of the motion.  In arguing only that it has exercised its statutory right to rescind, BLS offers just one reason why the agreements should not be enforced.  However, under the relevant statute mentioning recission and cited by BLS, Md. Code Ann., Bus. Reg. § 14-227(c), rescission is simply a remedy that a court *may* grant; thus, rescission requires judicial intervention and cannot be asserted unilaterally by one party.  Moreover, although BLS argues that it has the right to rescind under subsection (c) because Sona sold BLS a franchise in violation of § 14-227(a)(1)(i)--which allows for a civil action for failure to register the franchise before its sale--the statutory right itself presupposes an agreement for sale.  In addition, BLS signed subsequent agreements after Sona properly registered.  ADA II; FA II; FA III.  The effect of these additional agreements on the first set of agreements (ADA I and FA I) is unclear at this stage of the litigation, however, they each contain a standard integration clause suggesting that they have replaced the prior agreements.  Finally, BLS does not challenge ADA II and FA II,

which were both signed after proper registration.  As a contractual agreement exists, at least at this point, the Court turns to the forum-selection clauses.

In diversity cases such as this, the Fourth Circuit applies state law to determine the enforceability of a forum-selection clause.  *Eisaman v. Cinema Grill Systems, Inc.*, 87 F.Supp.2d 446, 448 (D. Md. 1999).  It is not clear in this case, however, which state law should be applied.  Maryland's "contract conflict of law rule is *lex loci contractus*, which directs that the construction and validity of a contract is governed by the law of the state where the contract was made."  *Id*. at 448 n.3 (*citing American Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 570-73 (1995)).  "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs."  *Id*. (*citing Commercial Union Ins. Co. v. Porter Hayden Co.*, 97 Md.App. 442, 451 (1993), *vacated on other grounds*, 339 Md. 150 (1995)).  Here, it is not clear where that last act occurred.  However, as (1) the Defendants cite the Supreme Court's discussion of forum-selection clause enforceability in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, (1972), which Maryland applies, *Secure Financial Service, Inc. v. Popular Leasing USA, Inc.*, 391 Md. 274, 283 (2006); (2) BLS fails to challenge the Defendants' analysis; and (3) BLS's claims are based on Maryland law, the Court will apply Maryland's law

5

regarding enforceability.

Under Maryland law, "a forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable." *Secure Financial*, 391 Md. at 283 (discussing *Bremen*). "[A] court may deny enforcement of such a clause upon a clear showing that, in the particular circumstance, enforcement would be unreasonable." *Id*. Such a clause is unreasonable if: (1) "it was induced by fraud or overreaching;" (2) "the contractually selected forum is so unfair and inconvenient as, for all practical purposes to deprive the plaintiff of a remedy or its day in court;" or (3) "enforcement would contravene a strong public policy of the State where the action is filed." *Id*.

Although BLS argues that arbitration, if enforceable, should occur in Maryland, it focuses its argument on choice-of-law issues, while here, the Court is confronted with a forum-selection clause. In fact, BLS omits any argument specifically addressing the enforceability of the forum-selection clause(s).

As Maryland law focuses on whether the forum selection clause itself was induced by fraud or overreaching, *Gilman v. Wheat, First Securities, Inc.*, 345 Md. 361, 379 (1997), and BLS offers no argument or evidence supporting such a finding, the Court concludes that the first unreasonableness factor does not militate in favor of finding the clause unenforcable. Moreover,

6

despite the opportunity to do so in its response memorandum (Paper No. 25), BLS offers no argument regarding inconvenience or a countervailing public policy that would be subverted by dismissal.[2]  Accordingly, enforcement of the forum selection clause would not be unreasonable and as a result, the case will be dismissed without prejudice to the filing of a new action in the contractual forum.

III. Conclusion

    For the reasons discussed above the motion to dismiss will be granted.

<u>April 11, 2007</u>                                        <u>      /s/          </u>
Date                                             William D. Quarles, Jr.
                                               United States District Judge

---

[2] Although Maryland has an interest in its Franchise Law, which likely governs the franchise relationship at issue, there is no evidence that the Courts in the proper forum would be unable to apply it.